NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SMART PHARMACY, INC. and HIGHLAND PHARMAC, LLC.., individually, and on behalf of others similarly situated, | Hon. Dennis M. Cavanaugh |
| Plaintiff, | OPINION |
| v. | Civil Action No. 11-cv-6485 (DMC) (JAD) |
| MEDCO HEALTH SOLUTIONS, INC., | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Motion to Dismiss by Defendant Medco Health Solutions, Inc. (hereinafter "Defendant" or "Medco"). Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Defendant's Motion is **denied.**

I.   BACKGROUND

Smart Pharmacy, Inc. and Highland Pharmacy, LLC, individually and on behalf of others similarly situated (hereinafter, "Plaintiffs") filed this lawsuit alleging that Defendant's practices in connection with the reimbursement for pharmaceutical services breached various state's laws. Plaintiffs seek to recover monies recouped by Defendant under allegedly abusive audit procedures. Plaintiffs claim "Medco unilaterally and improperly retracts monies from the pharmacy for the alleged discrepancies by withholding future reimbursements due and payable to the pharmacy." (Am. Compl. ¶ 5). Plaintiffs allege Defendant's actions are in breach of various

1

states' contracts, conversion, promissory estoppel, and implied covenant of good faith laws, in addition to Florida's Prompt Payment law. Plaintiffs seek to represent three classes of pharmacies nationwide in a putative class action filed pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2) and (b)(3) ("Vacation Supply Class," "Florida Class, " and "Overpriced Compound Class.") (Am. Compl. ¶75).

Plaintiffs filed their original Complaint on November 4, 2011. (ECF No. 1). On December 30, 2011, Defendant filed its first motion to dismiss. (ECF No. 10). On July 30, 2012, this Court dismissed Plaintiffs' original Complaint without prejudice. (ECF Nos. 18 and 19). On August 24, 2012, Plaintiffs filed their First Amended Complaint. (Am. Compl., ECF No. 20). The present Motion to Dismiss was filed by Defendant on October 10, 2012 (Def.'s Mot., ECF No. 30).

## II.     STANDARD OF REVIEW

In deciding a motion under FED. R. CIV. P. 12(b)(6), the District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." Id. On a motion to dismiss, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Plaintiff's complaint is subject to the heightened pleading standard set forth in Ashcroft v. Iqbal:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial

2

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . Determining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009) (quoting Twombly, 550 U.S. at 557, 750).

## III. DISCUSSION

### A. Promissory Estoppel Claims

Counts Seven, Eight and Nine of the Amended Complaint assert a claim of promissory estoppel against Defendant on behalf of the three putative classes based on Plaintiffs' reliance on Defendant's alleged promise to pay for prescriptions through Defendant's TelePAID®[1] system. Plaintiffs allege that Defendant made a "clear and definite promise" to pay each pharmacy an agreed upon amount through its acceptance of the claims through TelePAID®. (Am. Compl. ¶¶ 180, 188, 196). Through the making of these "promises," Plaintiffs allege Defendant expected them to rely on these promises and, indeed, they did rely on these promises to their detriment. (Id. ¶¶ 183, 191, 199). In doing so, Plaintiffs claim they were damaged when Defendant audited these submissions and found it overpaid the pharmacies. (Id. ¶¶ 186, 194, 202).

"Promissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Toll Bros., Inc. v. Board of Chosen Freeholders of Burlington, 994 A. 2d 1, 19 (N.J. 2008) (citing Lobiondo v. O'Callaghan, 767 A. 2d 515 (N.J. Super. Ct. App. Div. 2003)).

Defendant argues that Plaintiff cannot make out a claim for promissory estoppel because

---

[1] In the Complaint, Plaintiffs refer to the TelePAID system as TelePAID©, but Defendant refers to the system as TelePAID® in its Motion to Dismiss. As the system is Defendant's, the Court will refer to it as TelePAID® in this Opinion unless in a direct quote of the Amended Complaint or Plaintiff's other pleadings.

3

they fail to properly plead the first and third elements. First, Defendant argues that Plaintiffs' claims must be dismissed because "the 'purported promises' made by [Defendant] are not 'clear and definite' as required under New Jersey law." (Def.'s Mot. 5). Additionally, Defendant argues that Plaintiff's reliance on the alleged promise was not reasonable, as the promised prices were not final and were subject to audit by Defendant. (Id.).

The first issue is whether the complaint adequately alleges a "clear and definite" promise from Defendant as to the price it was going to pay to each pharmacy. Chapter 8.1 of Defendant's Pharmacy Services Manual, provided to the pharmacies, states the following:

> All of the claims you submit to Medco are subject to audit. Medco's Pharmacy Audit Program helps to ensure that you are submitting and dispensing claims in accordance with the Manual and that you comply with program guidelines. The audit program also helps to protect against fraud, waste and abuse. Provider agrees that Medco's Pharmacy Audit Program is the final step in determining whether a prescription claim is entitled to reimbursement.

(Pharmacy Services Manual, Exh. A to Def.'s Mot.) Defendant argues "under the clear and unambiguous terms of the Agreement, Plaintiffs are not promised or entitled to any specific amount of reimbursement for any prescriptions unless and until Medco chooses to perform an audit of Plaintiffs' submissions through TelePAID®.

The Amended Complaint alleges the following facts:

> 21. Defendant created a proprietary on-line system of "adjudicating" prescriptions with pharmacies in its network called the TelePAID©[2] system. Adjudication is the process whereby the pharmacy and Medco agree on the terms of a prescription drug claim submitted by the pharmacy to Medco, including the price of the prescription.
> 22. Only after the parties have a meeting of the minds as to price for a given prescription through TelePAID©, do the Plaintiffs (and members of the Classes) fill and dispense the prescription.
> 23. Based on the course of dealings between the parties, the adjudicated price set forth through TelePAID© is the contract price.
> 24. Based on the general usage in trade, the price set forth through TelePAID© is the contract price.

---

[2]Plaintiffs' Amended Complaint uses TelePAID© instead of TelePAID®.

25. The TelePAID© adjudication is supported by consideration in that Plaintiffs (and the class members) pay approximately $0.10 to $0.99 per on-line submission.

26. According to the Agreement between Medco and Plaintiffs (and the class members): Medco will pay Pharmacy for covered services provided by Pharmacy to Eligible Persons in accordance with the payment rate information communicated via the TelePAID© System, less the applicable co-payment/co-insurance, deductible or other payment to be paid directly by the Eligible Person.

27. Medco remits payment to the Pharmacy on a bi-weekly or semi-monthly basis, for prescription drug claims submitted to it by the Pharmacy through TelePAID©.

28. Medco and Plaintiffs (as well as the putative members of the Classes) establish "mini-contracts" each time an offered price is communicated through the TelePAID© System by Medco and Plaintiffs accept the offer by filling the prescription. Once Medco processes the claims submission, this becomes an enforceable contract, requiring Medco to reimburse Plaintiffs (and the members of the Classes) at the rate communicated through the TelePAID© System.

29. In addition, by filling the prescription based on the price and information communicated through the TelePAID© System, Plaintiffs (and the members of the Classes) rely on Medco's reasonable promise to reimburse them for those prescriptions at the rates set forth therein.

At this point in the litigation, the Court is convinced that Plaintiffs have sufficiently pled a clear and definite promise made by Defendant to the Plaintiffs. While Defendant maintains the right to audit Plaintiff's claims submissions, the Court does not believe that this type of audit is factually similar to those in the cases cited by Defendants that gave rise to a finding of "indefinite promises." See Del Sontro v. Cendant Corp., Inc., 223 F. Supp. 2d 563, 574-75 (D.N.J. 2002); Aircraft Inventory Corp. v. Falcon Jet Corp., 18 F.Supp.2d 409, 416 (D.N.J.1998) (Indefinite promises or promises subject to change by the promisor are not "clear and definite" and cannot give rise to a claim for promissory estoppel.); see also Scagnelli v. Schiavone, No. 09-3660, 2012 WL 3578163, at *8 (D.N.J. Aug. 20, 2012) (Promises "subject to change" are "too vague to be enforced"); Watson v. City of Salem, 934 F. Supp. 643, 661 (D.N.J. 1995) (dismissing plaintiff's claim for promissory estoppel where the promise was "conditional and contingent" upon satisfaction of a future condition). Here, Defendants represented that the

promise of payment should be relied on. Plaintiffs argue:

> In stark contrast to the facts and purported 'promises' in Del Sontro, Scagnelli and Watson, Medco did not promise to do something in the future for Plaintiffs. Rather, Medco clearly and definitively promised (and in fact, expressly instructed) Plaintiffs to rely upon the pricing information transmitted to them at the point of sale through Medco's TelePAID® system. Thus, Medco is making a clear and definite promise as to the price of the prescription, not a promise to do (or not do) something in the future.

(Pl.'s Opp'n Br. 14). This Court agrees. Accepting all facts as true for purposes of this Motion, it would be inappropriate to dismiss the promissory estoppel claims at this time based on the facts pled in the Amended Complaint. See Phillips, 515 F. 3d at 231.

Defendant next argues that "as the Pharmacy Services Manual governing the Plaintiffs' relationship with Medco expressly provides that Medco may audit or review claims submitted through the TelePAID® system as the 'final step' in determining the proper amount owed for each prescription . . . it was not reasonable for Plaintiffs to rely on these alleged 'promises,' as they were subject to audit and change." (Def.'s Mot. 5).

Again, the Court disagrees. As the Plaintiffs have sufficiently pled a promise to give rise to a claim of promissory estoppel, the Court also finds that this reliance was reasonable. Defendant's Manual, which is incorporated by reference into the parties' Agreement, instructs Plaintiffs to "rely on the TelePAID® system to receive accurate information regarding the specific patient, group, prescription drug, co-payment/coinsurance, and pricing pertaining to the claim submitted." (Exh. A to Def.'s Mot.) The Amended Complaint also alleges that Defendant did in fact pay Plaintiffs for each of the claims at the price it agreed to pay them through the TelePAID® system at the point of sale; thus the Court finds Plaintiffs have sufficiently pled that reliance on the promise was reasonable. Defendant's Motion to Dismiss Counts Seven, Eight, and Nine of the Amended Complaint is therefore denied.

## B. Claims brought by Plaintiff that arose on or before December 31, 2008

Plaintiffs' Amended Complaint also brings counts on behalf of the Vacation Supply Class and the Florida Class arising under Defendant's Agreements with provider pharmacies at any time within the last six years. Defendant argues that "pursuant to the Pharmacy Services Manuals in effect, all disputes arising on or before December 31, 2008 are subject to mandatory, individual arbitration." (Def.'s Mot. 8). Thus Defendant moves this Court to dismiss any claims arising on or before December 31, 2008.

Medco's 2006/2007 and 2007/2008 Pharmacy Services Manuals expressly require all disputes, controversies or claims to be submitted to arbitration under the American Arbitration Association's rules:

> No civil action concerning any dispute, controversy, or claim between Pharmacy and Medco shall be instituted before any court. Any such dispute, controversy, or claim must be submitted to arbitration administered by the American Arbitration Association ("AAA") under AAA rules. This arbitration requirement . . . covers any claim based on contract, tort, statute, common law, or equity, whether based on past, ongoing, or future conduct.

(Exh. A to Def.'s Mot.) The arbitration provision also states that "[a]ny arbitration will be conducted as an individual arbitration. Neither Pharmacy nor Medco consents to or agrees to any arbitration on a class, consolidated, joined or representative basis." (Id.)

Defendant correctly points out that the expiration of a contract does not automatically extinguish the parties' duty to arbitrate a dispute arising under the contract unless the parties' express an intent to override their prior agreement. See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union, AFL-CIO, 430 U.S. 243, 255 (1977) ("where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.")

Plaintiffs cite to two portions of Defendant's Manuals to argue that the parties did in fact

7

express a clear and unmistakable intent to override the arbitration agreement. First, the Manuals subsequent to the 2007/2008 Manual state "[t]his version of the Manual supersedes and replaces all prior versions of the manual." (2009/2010 Manual and 2011 Manual, Exh. A to Mizeski Cert., ECF No. 35-1). Additionally, subsequent Manuals include a "Governing Law and Jurisdiction" section. These sections provide:

> All disputes and matters between Provider and Medco arising out of Provider's Agreement with Medco shall be litigated before the U.S. District Court for the District of New Jersey, or, as to those lawsuits to which the Federal Court lacks subject matter jurisdiction, before a court located in Bergen County, New Jersey. The Provider's Agreement with Medco shall be governed, construed, and enforced in accordance with the laws of the State of New Jersey.

(Section 6.15 of the 2009/2010 Manual and Section 6.26 of the 2011 Manual, Exh. A. to Mizeski Cert.). The Court is convinced that these amendments to the Manuals are expressions of the parties' clear intention to expressly supersede and replace the arbitration provision in the previous 2007/2008 Manual. While Defendant cites to certain case law outside of this Circuit, it is neither binding nor persuasive with regards to the present motion. Thus Defendant's Motion to Dismiss Plaintiff's Claims based on transactions arising on or before December 31, 2008 is also dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **denied**. An appropriate order follows this Opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Date:       May 14, 2013
Original:   Clerk's Office
cc:         Hon. Joseph A. Dickson, U.S.M.J.
            All Counsel of Record

8